Hillsborough
No. 79-122

WILLIAM E. ARNOLD

v.

CITY OF MANCHESTER AND
CITY OF MANCHESTER BOARD OF HEALTH

December 12, 1979

*Sheehan, Phinney, Bass & Green*, of Manchester (*Bradford E. Cook* orally), for the plaintiff.

*Charles W. Flower, Jr.*, assistant city solicitor of Manchester, by brief and orally, for the defendant city of Manchester.

*James M. Winston*, of Manchester, by brief and orally, for the defendant city of Manchester Board of Health.

BOIS, J. This is a bill in equity for injunctive relief brought by plaintiff against the city of Manchester and its board of health, following his discharge as city health officer. The Trial Court (*Wyman*, J.) ruled that the board of health did not have the authority to discharge plaintiff, and ordered his reinstatement. We affirm the court's decree.

Plaintiff was appointed as health officer for the city of Manchester in June 1969 and held that position for nine years. The board of mayor and aldermen had previously changed the requirement that the public health officer be a physician to enable plaintiff, who held only a master's degree in public health, to fill that position. On June 9, 1978, the board of health announced that plaintiff's employment would terminate on June 23, 1978. Alleging that his right to due process had been violated, plaintiff brought this action on June 22, 1978, seeking reinstatement pending an appropriate hearing. The court held several hearings, and ordered the plaintiff reinstated as health officer, ruling that the purported discharge by the board of health was "null, void, and of no effect."

The principal issue in this case is whether the authority to discharge the Manchester public health officer is vested in the board of health or the board of mayor and aldermen. This presents a question of statutory construction.

It is clear that the General Court by private act in 1846 vested the Manchester City Council with all authority then held by the board of health:

> All the power and authority now vested by law in the board of health for the town of Manchester, shall be transferred to and vested in the city council, and shall be carried into execution by the appointment of health commissioners, or in such other manner as the city council shall determine.

*An Act to establish the city of Manchester*, N.H. Laws 1846, ch. 384:20 (hereinafter 1846 Act). This provision was adopted verbatim in the charter of the city of Manchester. MANCHESTER, N.H., CODE OF ORDINANCES, CHARTER § 20 (Municipal Code Corp. 1972). *See also* Laws of N.H. 1853, ch. 1404:22 (similar provision re city of Nashua); Laws of N.H. 1855, ch. 1699:20 (similar provision re city of Dover).

In 1867, the General Court by public act enacted a provision similar to the aforementioned private acts:

> All the powers vested in the board of health of towns shall be vested in the city councils, and shall be carried into execution in such manner, by such officers, and with such powers as the city councils shall determine.

GEN. STAT. OF N.H. 1867, ch. 44:10. This provision has remained unchanged to date. *See* RSA 47:12 (1970); REV. LAWS OF N.H. 1942, ch. 66:12; PUB. LAWS OF N.H. 1926, ch. 54:11; PUB. STAT. OF N.H. 1891, ch. 50:9; GEN. LAWS OF N.H. 1878, ch. 48:9.

In 1885, the General Court enacted a private law entitled "An Act to Establish a Board of Health for the City of Manchester, and Define Its Powers and Duties." It is this act which is the source of controversy. The act provides in pertinent part as follows:

> *Section 2.* The board shall enter upon its duties on the first Monday in February annually; said board shall organize by the choice of one of its members as chairman and another as clerk, and *they may adopt such rules and regulations for their own and the government of all subordinate officers by them employed as they may deem expedient,* not repugnant to

the laws of the state, and the said board shall receive such compensation for their services as the city councils may determine.

*Section 3. The board of health hereby constituted shall have and exercise all the powers vested in,* and shall perform all the duties prescribed to *health officers of towns under the statutes, and shall have power to appoint such sanitary inspectors as they may deem necessary,* and define their duties, term of service, and fix their compensation; *provided* (emphasis original), that the whole amount of such compensation shall not exceed the amount appropriated therefor by the city councils; and said inspectors so appointed shall be responsible to the board and under its control and direction; and it shall be the duty of said inspectors, under the direction of said board, to enforce the laws of the state, the ordinances of said city, and the regulations of said board relative to health, and make a report to said board in writing of all acts done by them, as such inspectors, once each month.

(Emphasis added.) N.H. Laws 1885, ch. 165 (hereinafter 1885 Act). Although this act was subsequently amended by the General Court on two occasions, the changes are not material to the issue presented as they do not bear upon the powers or duties of the board of health. *See* N.H. Laws 1905, ch. 174; N.H. Laws 1965, ch. 495.

◼ Defendants argue that the language of the 1885 Act grants to the board of health the authority to hire and fire the city's health officer. Section 2 of the 1885 Act provides that "they [the board of health] may adopt such rules and regulations for ... the government of all subordinate officers by them employed as they may deem expedient...." Even if we assume that the category of health officer falls within the meaning of "subordinate officers by them employed," this language does not grant the board the power to hire or fire the health officer, but only to adopt rules and regulations for the proper direction and management of that position. The only reference made to the power to hire or fire is in section 3, which grants the board of health the "power to appoint such sanitary inspectors as they deem necessary." This language clearly grants no authority to appoint or discharge a health officer. *See In re Gamble,* 118 N.H. 771, 777, 394 A.2d 308, 311 (1978).

The courts have no function in redrafting legislation to make it conform to an intention not fairly expressed in the language of the statute. *Public Service Co. v. State*, 101 N.H. 154, 162, 136 A.2d 600, 606 (1957). Private acts especially must be strictly construed. *See Beacon Oyster Co. v. United States*, 63 F. Supp. 761, 765 (Ct. Cl. 1946); 2 J. SUTHERLAND, STATUTORY CONSTRUCTION § 43.04 (4th ed. C. Sands 1973). The words used must be given their ordinary meaning unless it appears from the context that a different meaning was intended. *Londonderry v. Faucher*, 112 N.H. 454, 457, 299 A.2d 581, 583 (1972); *see Town of Greenland v. Bunker*, 118 N.H. 783, 785, 394 A.2d 321, 322 (1978); *Orford School Dist. v. State Bd. of Educ.*, 114 N.H. 60, 63, 314 A.2d 665, 667 (1974). We conclude that a plain reading of the 1885 Act grants no authority to the board of health to hire or fire health officers.

Defendants find an additional grant of authority for the Manchester Board of Health to appoint health officers by virtue of an implied repeal of the 1846 Act by the 1885 Act. They argue that the effect of the 1885 Act was to divest the city of all authority which it held by virtue of the 1846 Act except for the appointment of the members of the board of health. We do not read the 1885 Act to sweep so broadly.

Section 3 of the 1885 Act provides that "[t]he board of health hereby constituted shall have and exercise all the powers vested in ... health officers of towns under the statutes." The powers vested in "health officers of towns under the statutes" at that time included the authority, *e.g.*, to make regulations for the prevention and removal of nuisances, to relocate persons infected with pestilent diseases, and to make regulations regarding quarantine procedures. GEN. LAWS OF N.H. 1878, ch. 111–13. The powers of the health officers, however, were still subject to the limitations of the 1846 Act, and GEN. LAWS OF N.H. 1878, ch. 48:9, which were neither expressly nor impliedly repealed by the 1885 Act.

A plain reading of section 3 of the 1885 Act is that the powers granted to the Manchester Board of Health by that act are not exclusive, but include all powers granted to town health officers provided by statute. Because a reasonable construction of the two acts taken together can be found, this court will not find that there has been an implied repeal. The doctrine of implied repeal is disfavored in this State, and will not be found without evidence of convincing force. *Board of Selectmen v. Planning Bd.*, 118 N.H 150, 152–53, 383 A.2d 1122, 1124 (1978). Accordingly, we reject defendants' argument, and hold that the 1885 Act did not grant authority to the Manchester Board of Health to appoint or discharge health officers.

██ ██ Defendants argue that, even if the board of mayor and aldermen had been vested by law with authority to appoint the city health officer, only the board of health had the power to fire plaintiff in this instance because the board of health had hired him. We disagree. The board of health cannot bootstrap itself into a position of authority by virtue of a wrongful exercise of authority in the first instance. Furthermore, the record supports the court's finding that plaintiff was employed by the city through the board of health acting for and on behalf of the board of mayor and aldermen. The board of mayor and aldermen had changed the specifications for the position of city health officer to permit plaintiff to fill that position and had allowed him to remain in that position for more than nine years. Any defect which may have accompanied his original appointment has been remedied by the subsequent ratification of the board of mayor and aldermen. *See McIntosh v. Personnel Comm'n*, 117 N.H. 334, 338, 374 A.2d 436, 439 (1977).

██ Regardless of the city's statutory interpretation or practice regarding the hiring and firing of the city health officer in the past, we uphold the trial court's conclusion that such powers are vested in the board of mayor and aldermen. See RSA 47:12; RSA 47:2; RSA 47:13; RSA 44:3; MANCHESTER, N.H. CODE OF ORDINANCES, CODE § 2–5, CHARTER §§ 1.2, 1.3, 7.1, 7.3, 7.4, 7.9, 9, 11, 20, 21 (Municipal Code Corp. 1972); N.H. Laws 1846, ch. 384; GEN. STAT. OF N.H. 1867, ch. 44; N.H. Laws 1885, ch. 165. We will not strain the language of the city charter and the statutes to accommodate inartful drafting or to sanction the past practices of the city of Manchester.

██ Plaintiff argues that he is entitled to attorney fees under *King v. Thomson*, 119 N.H. 219, 400 A.2d 1169 (1979) and *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977). He failed, however, to take exception to the court's order which did not award the costs and attorney fees prayed for. He also asserted in his answer to defendant's motion to reconsider that the court's findings and decree were "absolutely correct in every respect." We find that plaintiff waived any further consideration of his claim by his acquiescence to the court's decree. *See Sperl v. Sperl*, 119 N.H. 818, 408 A.2d 422 (1979).

In view of our holding, we need not reach the other issues defendants raise.

*Exceptions overruled.*

KING, J., did not sit; the others concurred.